**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GREGORY McCURRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 14 C 642** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) | **Maria Valdez** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Gregory McCurry's claim for Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the decision of the Commissioner of Social Security is granted, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

On August 16, 2010, Plaintiff filed a claim for Supplemental Security Income ("SSI"),[1] alleging disability since August 8, 1995. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an

[1] Plaintiff also concurrently filed for Disability Insurance Benefits ("DIB"); however, only the denial of SSI is contested in this appeal.

Administrative Law Judge ("ALJ"). Plaintiff personally appeared before the ALJ on February 16, 2012, at which time the hearing was postponed in order to allow Plaintiff time to seek representation. (R. 376-83.) On June 21, 2012, Plaintiff again appeared before the ALJ, again without representation, and testified. (R. 384-96.) Vocational expert Dr. Donald Harrison also testified. (R. 395-98.)

On December 7, 2012, the ALJ denied Plaintiff's claim, finding him not disabled under the Social Security Act. (R. 20-37.) The Social Security Administration Appeals Council then granted Plaintiff's request for review. (R. 361-65.) On December 5, 2013, the Appeals Council denied his claim, (R. 9-12), which represented the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 106 (2000). Plaintiff appeals that decision to the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Background

Plaintiff was born on December 25, 1961 and was fifty years old at the time of the ALJ hearing. He is a peacetime veteran of the United States Air Force. While serving overseas, Plaintiff was present at the scene of a terrorist attack. Since then, he has suffered from post-traumatic stress disorder ("PTSD"). He also has a history of depression, alcohol dependence, gastroesophageal reflux disease ("GERD"), tinnitus, lower back pain, and problems stemming from a 2010 injury to his right knee.

### B. Medical Evidence

The medical record contains evidence documenting Plaintiff's treatment at a Veterans Administration Medical Center ("VAMC") from August 24, 2009 through December 17, 2010. (R. 247-375.)

At an audiology consult on November 9, 2009, staff audiologist Debra Troyan assessed Plaintiff with mild to moderate high frequency sensorineural hearing loss in both ears. She counseled him regarding hearing aids and hearing protection in noise. (R. 347.)

On March 12, 2010, staff psychologist Michelle Buda Abela, Ph.D. performed a PTSD evaluation of Plaintiff. (R. 307-17.) Plaintiff described the terrorist attack he had witnessed and another life-threatening incident he encountered during his military service, related experiencing symptoms of depression, and reported drinking one to two pints of liquor twice a week. Dr. Abela noted that he met criteria for PTSD and alcohol dependence and indicated a need to rule out bipolar disorder. She found that Plaintiff's impairments caused a moderate impact on his social functioning and a severe impact on his occupational functioning. After this initial assessment, he received some ongoing psychotherapy from Dr. Abela as well as medication management from psychiatrist Michelle Novel Norris, M.D. (R. 325, 390-92.)

On July 20, 2010, staff psychologist Lamaurice Garner, Psy. D. prepared a detailed psychological assessment in connection with Plaintiff's disability review through the Department of Veteran's Affairs ("VA"). (R. 255-66.) Dr. Garner

confirmed Plaintiff's diagnoses of PTSD, alcohol dependence, and possible bipolar disorder, and opined that Plaintiff has a "fair prognosis if he can establish prolonged abstinence from alcohol." (R. 266.)

On July 27, 2010, the VA issued a Rating Decision granting Plaintiff disability compensation for service-connected PTSD disorder with alcohol dependence including symptoms of depression and anxiety. (R. 95-99.) The VA rated Plaintiff's PTSD and alcohol dependence as 50% disabling due to "occupational and social impairments with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week…impairment of short-and long-term memory; impaired judgment…disturbances of motivation and mood; [and] difficulty in establishing and maintaining effective work and social relationships." The VA deferred rating Plaintiff's lumbar strain to allow for an examination and medical opinion. The VA's decision also described Plaintiff's bilateral hearing loss, bilateral tinnitus, and irritable bowel syndrome, but did not establish a service connection for those ailments.

Plaintiff's most recent VAMC visits of record occurred in September 2010, when he presented with chronic lower back pain and a recent injury to his right knee. (R. 248, 253-54.)

On December 17, 2010 consultative examiner Elizabeth Edmond, M.D. examined Plaintiff, noting slight warmth in the right knee, which was larger in circumference than the left. (R. 236-42.) Because he wore a right-leg immobilizer

and used a cane, averring that he needed both to ambulate, Dr. Edmond did not test his heel walk, toe walk, tandem walk, or squat. (R. 237.) He demonstrated limited ranges of motion in his right knee and his lumbar spine. (R. 237, 239-40.) After a psychological consultative examination performed the same day, psychiatrist Basivi Baggidam, M.D., based on his observations and Plaintiff's disclosures, opined that Plaintiff "is able to understand, remember and follow through with directions when they are given to him." (R. 244-46.) He also opined that Plaintiff "does not get along with people" and "is aggressive or assaultative to others." (R. 246.) Dr. Baggidam diagnosed PTSD, dysthymic disorder in partial remission, intermittent explosive disorder, and a history of alcohol dependence, opining that Plaintiff's overall prognosis is "guarded." (*Id.*)

On December 29, 2010, agency reviewing consultants Blaine Pinaire, Ph.D. and Amy Schlag issued findings based on Plaintiff's 2009-2010 VAMC medical records and the reports of the consultative examiners. (R. 38-54.) The consultants determined that Plaintiff has eight severe medically determinable impairments, with his primary disorder being an anxiety disorder with "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." (R. 44-45.) Dr. Pinaire opined that Plaintiff's mental disorders cause only mild restrictions in his activities of daily living, but moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace. (R. 45-46.) In a mental residual functional capacity assessment, Dr. Pinaire pined that Plaintiff is moderately limited in his ability to

understand, remember, and carry out detailed instructions, but he is not significantly limited with respect to very short and simple instructions. He has moderate limitations in his ability to maintain attention and concentration for extended periods, and moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He is also moderately limited in his abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism, to get along with coworkers, and to respond appropriately to changes in the work setting. Dr. Pinaire explained that, despite these limitations, Plaintiff has no "significant" problems with attention, can "respond appropriately" to work situations, and has "sufficient concentration to perform simple (one- to two-step) tasks, all on a routine and regular basis." (R. 50-52.)

Medical consultant Ms. Schlag issued a physical residual functional capacity assessment dated January 21, 2011. (R. 47-50.) She stated that Plaintiff can occasionally lift twenty and frequently lift ten pounds, can stand or walk for approximately six hours in an eight-hour work day, can sit for about six hours in an eight-hour work day, is limited to occasional tasks with his right foot due to his right knee injury, and is limited to frequent but not constant bilateral handling and fingering due to tremors. Further, Plaintiff can only occasionally climb, balance, stoop, kneel, crouch, or crawl. He should avoid concentrated exposure to noise and even moderate exposure to hazards such as "unprotected elevations, dangerous

moving machinery, and other unprotected dangerous settings or situations of rough, even, slippery, shifting, or obstructed terrain.” (R. 49-50.) The reviewers assessed Plaintiff’s self-reports as only partially credible, as the need for a cane or crutches is not documented in the medical record. (R. 47.)

### C. Plaintiff’s Testimony

Plaintiff’s first attorney withdrew from the case on January 19, 2012. Plaintiff’s first hearing, on February 16, 2012, was therefore postponed to allow Plaintiff to obtain representation. (R. 378-79.) On June 6, 2012, Plaintiff retained another lawyer, who, one week later, also withdrew. (R. 386.) When Plaintiff again appeared without representation on June 17, 2012, the ALJ proceeded with the hearing.

Plaintiff testified that he completed college with a bachelor’s degree in political science. He uses a cane because of an injury he suffered when he fell from a fence while attempting to trim tree limbs. He reported that he had recently divorced and was living in a boarding house. He receives ongoing treatment from the VAMC. Plaintiff mentioned that a recent endoscopy revealed that he has Barrett’s esophagus.[2] He claimed not to have drunk “over a case of beer in the last six months.” (R. 387-94.)

---

[2] In Barrett’s esophagus, most often diagnosed in people who have chronic GERD, esophageal tissue is replaced by tissue similar to the intestinal lining. http://www.mayoclinic.org/diseases-conditions/barretts-esophagus/basics/definition/con-20027054 (last visited March 23, 2016).

### D. <u>Vocational Expert Testimony</u>

The ALJ asked Vocational Expert ("VE") Donald Harrison to consider a hypothetical person with the same age and education as Plaintiff with no past relevant work and a residual functional capacity ("RFC") limiting him to work at the light exertional level, lifting and carrying not more than twenty pounds occasionally and ten pounds frequently; who can stand and walk for six hours and sit for two hours in an eight-hour workday and only occasionally climb ramps and steps, balance, stoop, kneel, crouch and crawl; who can perform unskilled work in a low stress environment with only occasional decision-making and changes in work settings; and who can only occasionally interact with the public and coworkers. The ALJ asked if there exist jobs such a person could perform, and the VE replied that yes, such person could work as an office cleaner or nut and bolt packer. (R. 396-97.) On further questioning, however, the VE testified that if such person were off task for twenty percent of the day due to deficiencies in concentration, persistence, or pace, or had to miss two or more days from work each month, there would be no jobs that person could do. (*Id.* at 397-98.)

### E. <u>The Appeals Council and ALJ Decisions</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 8, 1985 through the date of the ALJ's decision. At step two, the ALJ found that Plaintiff has the severe impairments of PTSD, major depressive disorder, alcohol dependence in remission, minimal degenerative changes of lumbosacral spine, spina bifida occulta at S1 (the first sacral vertebra),

knee arthralgia, and obesity. At step three, the ALJ found Plaintiff's impairments do not meet or medically equal one of the listed impairments. He also found that Plaintiff has no restriction in his activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (R. 9-10, 22-24.) At step four, the ALJ determined that Plaintiff had no past relevant work. However, at step five, based on the VE's testimony and Plaintiff's age, education, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. (*Id.* at 28-30.)

The Appeals Council reviewed the entire record, including the hearing recording, and adopted the findings of the ALJ. (R. 9-11.) It also supplemented the ALJ's decision with an analysis of Plaintiff's disability finding from the VA, to which it ultimately assigned "little weight."

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the Commissioner considers the following five questions in order: (1) Is the

claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**II. JUDICIAL REVIEW**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of a final decision of the Commissioner (here, the decision of the Appeals Council affirming the findings of the ALJ) is limited to determining whether its findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that an ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The Commissioner is not required to address "every piece of evidence or testimony in the record, [but the] analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the Commissioner denies benefits to a claimant, she must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The written decision must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors

his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

On appeal, Plaintiff argues that the ALJ committed multiple errors in denying his disability claim. Specifically, Plaintiff faults the ALJ for (1) not obtaining a valid waiver of representation before proceeding with the second hearing; (2) failing to develop the record to the extent required when a claimant is unrepresented by counsel; (3) performing a flawed analysis of his RFC; and (4) failing to adequately question the VE. Because the RFC issue is dispositive, the Court begins its discussion there.

### A. Residual Functional Capacity Assessment

Plaintiff argues that the ALJ made several errors in his RFC assessment. An RFC "represents the most that an individual can do despite his or her limitations or restrictions." SSR 96-8p, 1996 WL 374184, at *4-5; *see* 20 C.F.R. § 1545(a)(1). This determination is used at step four to determine whether a claimant is capable of performing his past work, and at step five to determine whether a claimant is capable of performing other work. *See id.* at *3-4. An ALJ must make his RFC determination based on all of the relevant evidence in the case record. *Id.* at *5.

The ALJ's explanation of his RFC assessment consists largely of a list of medical test results devoid of any analysis. (R. 25-27.) For example, he listed the

result of Plaintiff's audiology exam, but did not explain how he considered that in formulating his RFC assessment. He dutifully noted that Dr. Baggidam had reported that Plaintiff was aggressive or assaultive, but did not tie that evidence to his RFC assessment. He noted that Dr. Edmond had diagnosed "possible internal derangement of the right knee," but again did not account for that in considering what Plaintiff can and cannot do. An ALJ is required to do more than list evidence and state conclusions; he must also provide "an adequate discussion of the issues" and "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin,* 765 F.3d at 695 (quoting *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d at 351).

In addition to failing to explain his analysis of much of the evidence he did consider, the ALJ omitted key evidence. His opinion made no mention of the RFC assessments performed by the agency reviewers, Dr. Pinaire and Ms. Schlag. Social Security regulations require the ALJ to evaluate each medical opinion provided in connection with the claimant's application, and specifically mandate consideration of the RFC assessments of agency consultants. *See* 20 C.F.R. 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); SSR 96-6p, 1996 WL 374180 at *4 (explaining that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists"). The ALJ's failure to even mention the RFC assessments provided by Dr. Pinaire and Ms. Schlag leaves the Court no indication that he considered them in his analysis. *See Riley v. Colvin,*

No. 12 CV 4305, 2014 WL 3687737, at *6 (N.D. Ill. July 24, 2014) (finding that the ALJ's failure to cite to an agency reviewer's opinion "suggests that the ALJ did not incorporate it into her analysis").

This omission is particularly concerning where, as here, the agency's own reviewers have indicated that Plaintiff has restrictions beyond those found by the ALJ. The physical RFC assessment deems Plaintiff unable to tolerate even moderate exposure to hazards including "slippery" or "obstructed terrain." (R. 49-50.) It also indicates that he should avoid "concentrated exposure to noise." (*Id.*) The ALJ neither included these restrictions in his assessment of Plaintiff's RFC nor explained their omission. The Court cannot say this error was harmless, as it seems that an office cleaner (one of the jobs that Plaintiff was deemed capable of performing) might at least occasionally encounter slippery floors and obstructions.

Finally, the ALJ's RFC assessment is also flawed because it relied in part on his mischaracterization of the results of Plaintiff's physical consultative exam, describing his ranges of motion as "normal." (R. 27.) While Plaintiff did in fact demonstrate normal ranges of motion in his ankles and hips, Dr. Edmond described limitations in the motion of both the lumbar spine and right knee. In sum, throughout his assessment of Plaintiff's physical RFC, the ALJ failed to build the requisite "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014).

## B. Failure to Develop The Record

Plaintiff also asserts that he did not properly waive his right to counsel at his hearing and the ALJ subsequently failed to fully and fairly develop the record as required for an unrepresented claimant. Indeed, the ALJ failed to fully inform Plaintiff of his rights as required in this Circuit, and therefore never obtained an effective waiver of counsel. *See Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991). Further, the ALJ's extremely abbreviated questioning of Plaintiff at the hearing—Plaintiff's oral testimony spans a scant nine pages of the record and does not touch on any of his PTSD or depression symptoms—can hardly be said to meet the ALJ's heightened duty "scrupulously and conscientiously to probe into, inquire of and explore for all for the relevant facts" due to unrepresented claimants. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Smith v. Sec'y of Health, Education, & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)) (internal quotation omitted).

The ALJ also failed to adequately develop the record after the hearing. At the hearing, he twice noted that he had no medical records from the prior two years and asked Plaintiff sign a release allowing the ALJ to obtain Plaintiff's more recent medical history from the VA. (R. 391, 398). However, the record contains no indication that the document request was ever sent or replied to, and the ALJ issued his findings without so much as noting the absence of any treatment records from 2011 and 2012.

However, a failure to develop the record, even under the heightened standard afforded *pro se* claimants, only mandates remand where the Plaintiff has also shown how he was prejudiced by the error. *Thompson v. Sullivan,* 933 F.3d at 586. Plaintiff, who now has the benefit of counsel, has not provided the missing medical records or otherwise clarified "how [he] was prejudiced by the record that was created." *Schenfeld v. Apfel,* 237 F.3d 788, 798 (7th Cir. 2011.)

Although the error does not warrant remand by itself, the Court admonishes the Commissioner that if Plaintiff again appears without representation, the ALJ should make certain to comply with the requirements of *Thompson* and *Binion*.

**C. Vocational Expert Testimony**

Plaintiff also alleges that, because the ALJ committed errors in eliciting VE testimony, the Commissioner failed at step five to meet her burden of showing that there are jobs in the economy that Plaintiff can do. Because this matter is remanded for a re-evaluation of Plaintiff's RFC, which will likely change the vocational assessment portion of the analysis as well, the Court declines to address these arguments here.

## CONCLUSION

For the foregoing reasons, Plaintiff Gregory McCurry's motion to reverse the decision of the Commissioner of Social Security is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.** **ENTERED:**

**DATE: April 6, 2016**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**